**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1891-23

ROBERT MOSS,

    Plaintiff-Appellant,

v.

SHAWN M. LATOURETTE,
In His Official Capacity
As Commissioner, New
Jersey Department Of
Environmental Protection,

    Defendant-Respondent.

_____

Submitted March 11, 2025 – Decided March 21, 2025

Before Judges Chase and Vanek.

On appeal from the Superior Court of New Jersey, Law Division, Mercer County, Docket No. L-1328-23.

Robert Moss, appellant pro se.

Matthew J. Platkin, Attorney General, attorney for respondent (Donna Arons, Assistant Attorney General, of counsel; Ruth A. Thompson, Deputy Attorney General, on the brief).

PER CURIAM

Plaintiff Robert Moss appeals the trial court's dismissal of his third lawsuit against defendant New Jersey Department of Environmental Protection (DEP) Commissioner, Shawn M. Latourette, objecting to the Forest Stewardship Plan (the Plan) as applied to the Sparta Mountain Wildlife Management Area (SMWMA). We affirm, discerning no abuse of discretion in the trial court's application of the entire controversy doctrine.

I.

In Moss v. State, (Moss I), No. A-5455-17 (App. Div. June 6, 2019) and Moss v. State, (Moss II), No. A-1607-19 (App. Div. Nov. 2, 2020), we affirmed the dismissal of plaintiff's two prior complaints.[1] In Moss II, we detailed the underlying facts and robust procedural history of this matter. We recount only the salient facts necessary for context:

> [SMWMA] consists of 3,461 acres of state land in Sussex and Morris Counties and hosts a number of forest types and wildlife . . . .
>
> In 2015, the DEP prepared a draft of the [Plan] for [the SMWMA] and posted the draft for public comment. After receiving and reviewing public

---

[1] In Moss I and Moss II plaintiff sued the DEP directly, rather than the DEP Commissioner. However, for the purposes of this appeal, we consider all three complaints as being asserted against the DEP, since the allegations in Complaint III address agency action only.

2

comments from various stakeholders, the DEP's Division of Fish & Wildlife (the DFW) approved the [Plan] on March 13, 2017. The DEP issued public notice of its approval of the [Plan] on May 3, 2017.

The [Plan] outlines five goals and objectives to guide its forest stewardship efforts over a ten-year period [such as maintaining the ecosystem and protecting hydrologic resources and wildlife].

. . . .

The [Plan] also discusses cautionary measures to be taken to ensure DEP forestry activities do not disturb or damage the hydrologic features within the [SMWMA], which include streams, ponds, wetlands, flooded forests, and vernal pools.

. . . .

On February 6, 2018, plaintiff . . . attempted to challenge the [Plan] by filing a complaint in lieu of prerogative writ[s] in the Superior Court, Law Division, Essex County, [(Complaint I)] seeking injunctive relief to prevent the [P]lan's implementation. The case was transferred to Mercer County, where the trial court dismissed plaintiff's complaint with prejudice. We affirmed that decision, agreeing with the trial court that the [Plan] was developed by the DEP through informal agency action, making it a final agency action falling within the exclusive jurisdiction of . . . this court. See [Moss I, (slip op. at 5)]. And since plaintiff did not challenge the [P]lan within forty-five days as required by Rule 2:4-1(b), nor did he seek a thirty-day extension of that deadline as permitted under Rule 2:4-4(a), we were "satisfied the trial court correctly determined his challenge was time-barred and appropriately declined

3

to transfer plaintiff's action to the Appellate Division for further consideration." Id. at 5.

On July 19, 2019, plaintiff filed a new complaint in lieu of prerogative writs against the DEP [(Complaint II)] . . .

> Plaintiff [sought] to enjoin further stand treatments [pursuant to the Plan] until [the] DEP rationally determines the impact of vernal pool buffer sizes on the viability and sustainability of populations of vernal-pool dependent species, and on the management goal of restoring certain other species through the creation of more diverse habitat, and rationally resolves any conflicts between the two goals.

[Moss II, slip. op. at 2-8.]

We affirmed the trial court's dismissal of plaintiff's complaint "[b]ecause plaintiff presented no cause of action appropriate for the trial court and because plaintiff's challenge to the [Plan] in the Appellate Division [was] untimely . . . ." Id. at 17.

On July 10, 2023, plaintiff filed this third action in lieu of prerogative writs (Complaint III), seeking a declaration that the DEP funded forest management practices in the SMWMA contrary to the Plan. Plaintiff argued the DEP's use of the Preserve New Jersey Green Acres Fund (Green Acres Fund), N.J.S.A. 13:8C-48, for forest management activities did not meet the statutory

definition of "stewardship" pursuant to N.J.S.A. 13:8C-45. Plaintiff further posited the DEP improperly allocated funds under N.J.S.A. 13:8C-48(b)(1) and N.J.S.A. 13:8C-48(j)(1).

Defendant moved to dismiss Complaint III, arguing the pleading failed to state a claim upon which relief can be granted and that dismissal was also appropriate based on lack of subject matter jurisdiction, res judicata, and the entire controversy doctrine. The trial court granted defendant's motion and dismissed plaintiff's complaint with prejudice, on various grounds, including application of the entire controversy doctrine.

The trial court explained that "[e]ven if [p]laintiff's complaint does not challenge the Plan, [p]laintiff cannot escape the fact that the allegations in [p]laintiff's instant complaint should have been raised in [his] previous complaints related to the Plan." The trial court further explained its rationale for the dismissal:

> The [previous] trial court dismissed both complaints with prejudice and the Appellate Division affirmed. Now [p]laintiff files his third complaint in lieu of prerogative writs, this time seeking to enjoin funding related to the Plan, which would effectively yield the same result as the prior two actions; stopping forest management practices related to the Plan. But there is no reason that [p]laintiff could not have asserted this cause of action in his previous two complaints; indeed, it should have been raised. Given the "totality of

5

circumstances" and the history related to the instant case, the court finds that application of the entire controversy doctrine promotes its objectives of "conclusive determinations, party fairness, and judicial economy and efficiency."

[(citations omitted) (emphasis added).]

Plaintiff appealed the trial court's dismissal order.

## II.

## A.

We apply a mixed standard of review to address plaintiff's sole argument that the trial court erroneously applied the entire controversy doctrine to bar Complaint III.

"[T]he decision to apply the [entire controversy] doctrine, as an equitable principle, 'is left to judicial discretion.'" Francavilla v. Absolute Resols. VI, LLC, 478 N.J. Super. 171, 178 (App. Div. 2024) (quoting 700 Highway 33 LLC v. Pollio, 421 N.J. Super. 231, 238 (App. Div. 2011) (explaining the application of the doctrine "is fact sensitive and dependent upon the particular circumstances of a given case")). Thus, the "abuse of discretion standard applies to our review of the decision to apply the doctrine." Ibid. (citing Mystic Isle Dev. Corp. v. Perskie & Nehmad, 142 N.J. 310, 322-23 (1995)). We only reverse the trial court's discretion in applying the doctrine if that "exercise of

6

discretion was 'manifestly unjust' under the circumstances." Ibid. (quoting Newark Morning Ledger Co. v. N.J. Sports & Exposition Auth., 423 N.J. Super. 140, 174 (App. Div. 2011)).

So long as we determine the decision to apply the doctrine does not constitute a mistaken exercise of discretion, "[w]e review de novo the law guiding the trial court's determination as to the [application of the] entire controversy doctrine" in barring the subsequent action. Ibid. (citing Higgins v. Thurber, 413 N.J. Super. 1, 5-6 (App. Div. 2010)). On de novo review, "a trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference." Ibid. (alteration in original) (quoting Rowe v. Bell & Gossett Co., 239 N.J. 531, 552 (2019)).

## B.

"The entire controversy doctrine 'generally requires parties to an action to raise all transactionally related claims in that same action.'" Francavilla v. Absolute Resolutions VI, LLC, 478 N.J. Super. 171, 178-79 (App. Div. 2024), citing Largoza v. FKM Real Est. Holdings, Inc., 474 N.J. Super. 61, 79 (App. Div. 2022) (quoting Carrington Mortg. Servs., LLC v. Moore, 464 N.J. Super. 59, 67 (App. Div. 2020)). The entire controversy doctrine "encompasses not only matters actually litigated but also other aspects of a controversy that might

have been litigated and thereby decided in an earlier action." Francavilla, 478 N.J. Super. at 179 (quoting Higgins, 413 N.J. Super. at 12).

Rule 4:30A sets forth that "[n]on-joinder of claims required to be joined by the entire controversy doctrine shall result in the preclusion of the omitted claims to the extent required by the entire controversy doctrine . . . ." "The entire controversy doctrine is a form of claim preclusion or res judicata and "has three fundamental purposes: (1) the need for complete and final disposition through the avoidance of piecemeal decisions; (2) fairness to parties to the action and those with a material interest in the action; and (3) efficiency and the avoidance of waste and the reduction of delay." Bank Leumi USA v. Kloss, 243 N.J. 218, 227 (2020).

The trial court's "initial inquiry [should be] whether [the multiple claims] 'arise from related facts or the same transaction or series of transactions.'" Dimitrakopoulos v. Borrus, Goldin, Foley, Hyman & Stahl, P.C., 237 N.J. 91, 109 (2019) (quoting DiTrolio v. Antiles, 142 N.J. 253, 267 (1995)). "[T]he determinative consideration is whether distinct claims are aspects of a single larger controversy because they arise from interrelated facts." Ibid. (quoting DiTrolio, 142 N.J. at 271).

The Court explained "[t]he doctrine's equitable nature 'bar[s] its application where to do so would be unfair in the totality of the circumstances and would not promote any of its objectives, namely, the promotion of conclusive determinations, party fairness, and judicial economy and efficiency.'" Dimitrakopoulos, 237 N.J. at 114 (quoting K-Land Corp. No. 28 v. Landis Sewerage Auth., 173 N.J. 59, 70 (2002)). "Because a violation of the entire controversy doctrine may result in the preclusion of a claim, a court must consider whether the party against whom the doctrine is sought to be invoked has had a fair and reasonable opportunity to litigate that claim." Hobart Bros. Co. v. Nat'l Union Fire Ins. Co., 354 N.J. Super. 229, 241 (App. Div. 2002). For entire controversy doctrine purposes, "[a] judgment of involuntary dismissal or a dismissal with prejudice constitutes an adjudication on the merits 'as fully and completely as if the order had been entered after trial.'" Velasquez v. Franz, 123 N.J. 498, 507 (1991) (quoting Gambocz v. Yelencsics, 468 F.2d 837 (3d Cir. 1972)).

Our de novo review of the "totality of the circumstances," leads us to conclude the trial court's reliance on the entire controversy doctrine to dismiss Complaint III with prejudice was not "manifestly unjust under the circumstances." Francavilla, 478 N.J. Super. at 178. We discern no abuse of

discretion in the trial court's finding that Complaint III "effectively yield[s] the same result as the prior two actions; stopping forest management practices related to the Plan."

When comparing plaintiff's trio of complaints side by side, we conclude these claims "are aspects of a single larger controversy because they arise from interrelated facts," specifically the implementation and execution of the Plan. Dimitrakopoulos, 237 N.J. at 109. In Complaint I, plaintiff asserted the Plan is arbitrary and capricious because its goal of restoring natural conditions is not supported by scientific research and "the [P]lan violates various acts limiting the use of Green Acres funds to recreation and/or conservation purposes [pursuant to] N.J.S.A. 13:8A-2, 13:8A-20, and 13:8A-36." Plaintiff also objected to the Plan's implementation in Complaint II, this time alleging further specifics relating to its various elements. Complaint III revolved around plaintiff's objection to implementation of the Plan, asserting the DEP is allocating Green Acres funds to certain forest management practices in violation of law, including the Preserve New Jersey Act, N.J.S.A. 13:8C-43 to -60.

Application of the entire controversy doctrine in this instance furthers the trial court's objectives to "promot[e]. . . conclusive determinations, party fairness, and judicial economy and efficiency." Dimitrakopoulos, 237 N.J. at

10

114.  Plaintiff has had more than a "fair and reasonable opportunity to litigate the claim."  See Hobart Bros, 354 N.J. Super. at 241.  All three complaints were dismissed with prejudice, constituting final adjudications on the merits.  Velasquez, 123 N.J. at 507.  Plaintiff could have joined all claims together in Complaint I, as each complaint is largely duplicative of its predecessor.

To the extent we have not addressed any of plaintiff's remaining arguments, we conclude they lack sufficient merit to warrant discussion in a written opinion.  R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

*M.C. Harley*

Clerk of the Appellate Division